**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Paul M. ZIEGLER, Defendant–Appellee.**

**No. CR 93–20007 JW.**

United States District Court,
N.D. California.

Sept. 8, 1993.

Parker Singh, Asst. U.S. Atty., Evan W. Jones, Sp. Asst. U.S. Atty., San Jose, CA, for plaintiff-appellant.

John A. Turner, Marina, CA, for defendant-appellee.

## ORDER REVERSING MAGISTRATE JUDGE'S ORDER

WARE, District Judge.

Plaintiff–Appellant United States of America ("Plaintiff") appeals Magistrate Judge Garrett's January 7, 1993 order granting Defendant–Appellee Paul M. Ziegler's ("Defendant") motion to suppress evidence of driving under the influence of alcohol obtained when Defendant was stopped at a sobriety checkpoint. Because the Court finds that the Magistrate Judge erroneously construed the Constitutional requirements for a sobriety checkpoint, the Court hereby REVERSES the Magistrate Judge's order of suppression and dismissal and REMANDS the case to the trial court for further proceedings consistent with this Order.

## I. BACKGROUND

The issue presented in this appeal is whether a search at a sobriety checkpoint violates the Fourth Amendment to the United States Constitution if motorists are not given advance publicity of the checkpoint. The Court holds that it does not.

On June 20, 1992, between the hours of 10:30 p.m. and 1:00 a.m., federal police officers conducted a "systematic vehicle inspection" checkpoint outside the Imjin Road Gate to Fort Ord Army Reserve. The police directed every fifth vehicle into an established inspection site and allowed all other vehicles to pass without inspection and search. At approximately 11:52 a.m., the police counted Defendant's car as a fifth vehicle and directed Defendant to drive into a designated parking stall within the army reserve area. While conducting the inspection and search, the officers detected the smell of alcohol on Defendant's breath. Defendant was subsequently asked to perform a series of field sobriety tests, which he failed. The police also observed several containers of beer in the rear seat of Defendant's vehicle. Based on these circumstances, Defendant was charged with driving under the influence and driving with a blood alcohol content of over 0.08%. Defendant later submitted to a urine test, which indicated that Defendant had a blood alcohol content of 0.19%.

Defendant waived his right to trial before a U.S. District Court Judge and instead consented to be tried by a U.S. Magistrate Judge. Defendant subsequently filed a motion to suppress evidence and to dismiss the case. The motion essentially sought to suppress all evidence obtained as a result of the systematic vehicle inspection on the grounds that the search was unreasonable and conducted in violation of Defendant's constitutional rights.

On January 7, 1993, Magistrate Judge Garrett granted Defendant's motion finding that Defendant's stop was unconstitutional because advance publicity of the vehicle checkpoint was not a part of the guidelines followed. Since the evidence was suppressed and there was no further evidence (ie. of express or implied consent) to sustain the government's charges, the case was dismissed.

Plaintiff now appeals the Magistrate Judge's order. Plaintiff argues on appeal that: (1) Magistrate Judge Garrett erred by

finding that systematic vehicle inspections require advance publicity in order to be constitutionally valid; (2) even if advanced publicity is required for civilian checkpoints, it is not required for inspections that take place on a military base because of the important federal government interests involved; and (3) even if the systematic vehicle inspection had not taken place, Defendant would still have been inspected upon entry to Fort Ord at the Imjin Gate.

## II.  DISCUSSION

### A.  *Timeliness of Appeal*

Defendant argues that Plaintiff failed to file a timely notice of appeal and that the appeal should therefore be dismissed.  The Court disagrees.

■ An appeal from a Magistrate Judge's order must be taken within 10 days of the entry of the decision or order.  Fed.R.Crim. Proc. 58(g)(2).  Federal Rule of Criminal Procedure 45(a) provides in relevant part: [1]

> In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday ...,  When a period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation.  As used in these rules, "legal holiday" includes ... Birthday of Martin Luther King, Jr....

Magistrate Judge Garrett's order was entered on Thursday, January 7, 1993.  Therefore, for purposes of time computation, the time began to run on Friday, January 8,

1993.  Plaintiff filed its notice of appeal on Tuesday, January 19, 1993.  Excluding Saturdays, Sundays, and the legal holiday of Dr. Martin Luther King, Jr.'s birthday, Plaintiff's notice of appeal was filed on the 7th computable day after the time began to run.  Accordingly, Plaintiff's appeal was timely filed and it will not be dismissed on this basis.

### B.  *Advance Publicity*

■ Undoubtedly, a seizure occurs within the meaning of the Fourth Amendment when a vehicle is stopped at a checkpoint.  *United States v. Martinez–Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990).  The issue then only becomes whether the seizure is reasonable, since the Fourth Amendment only prohibits unreasonable seizures.  *See Sitz*, 496 U.S. at 450, 110 S.Ct. at 2485.

■ In determining the reasonableness of a seizure that occurs at a systematic vehicle checkpoint, the court engages in a balancing test, weighing (1) the government's interest in the checkpoint program, (2) the extent to which the checkpoint advances this goal, and (3) the amount of intrusion upon the individual motorist.  *Sitz*, 496 U.S. at 448–50, 455, 110 S.Ct. at 2484–85, 2487.  A state's interest in preventing drunk driving has been considered a valid interest for purposes of this test.  *See id.* at 451, 110 S.Ct. at 2485.  Furthermore, checkpoints have been held to effectively advance this goal when properly administered.  *See id.* at 453–55, 110 S.Ct. at 2486–88.  With respect to this appeal, it is only the third factor that is in issue.[2]

---

1.  Defendant urges the Court to apply Federal Rule of Appellate Procedure 26(a) ("FRAP") with respect to computation of time because he argues that Federal Rule of Criminal Procedure 58(g)(1) ("FRCP") indicates that appeals be taken in accordance with the FRAP.  However, FRCP 58(g)(1) deals with appeals taken from orders by a district judge.  In this case, the order by a magistrate judge is being appealed, and thus, FRCP 58(g)(2) is applicable.  Because FRCP 58(g)(2) does not explicitly require that such appeals be taken in accordance with the FRAP (as does FRCP 58(g)(1)), appeals taken from a magistrate judge's order should be taken in accor-

dance with FRCP 45(a) regarding the computation of time.  If it was expected that appeals from a magistrate judge's order be taken in accordance with the FRAP, it would have been explicitly indicated in FRCP 58(g)(2), as it is in FRCP 58(g)(1) with respect to appeals of a district judge's order.

2.  With respect to the first issue, in this case, the Magistrate Judge determined that although the scope and purpose of the systematic vehicle checkpoint at Fort Ord was much broader than to simply apprehend intoxicated drivers (ie. the checkpoint program was additionally concerned

■ A key factor in weighing the level of intrusion upon the individual motorist is the existence and nature of procedural guidelines set up to minimize the degree of such intrusion by *curtailing the opportunity for the* exercise of unfettered discretion on the part of the police officers conducting the program. At issue in this appeal is whether the guidelines set up for the Fort Ord vehicle checkpoint were sufficient even though they did not provide for advance publicity or otherwise warn motorists of the checkpoint.[3] Relying primarily on *Sitz*, but also on *People v. Banks*, 11 Cal.App.4th 165, 13 Cal.Rptr.2d 920 (1992) and *Ingersoll v. Palmer*, 43 Cal.3d 1321, 241 Cal.Rptr. 42, 743 P.2d 1299 (1987), Magistrate Judge Garrett determined that advance publicity is required as a component of such guidelines in order to conduct a constitutionally valid checkpoint program. This Court disagrees.

While it is true that the guidelines in effect in the *Sitz* case provided for advance publicity, there is nothing in the holding or reasoning of the Supreme Court's opinion in that case that suggests that the vehicle checkpoint was only sustained on that basis. The Supreme Court's opinion in *Sitz* focused on the proper test to be applied in measuring the reasonableness of vehicle checkpoints, and then went on to evaluate the checkpoint program at issue in that case in light of this test. Although the Supreme Court discussed the intrusiveness issue in some detail (*see Sitz*, 496 U.S. at 451–53, 110 S.Ct. at 2485–87), it determined that, on balance, the objective intrusion on motorists stopped briefly at sobriety checkpoints is generally slight.

With respect to the subjective intrusion on motorists, the Supreme Court acknowledged concern for the fear and surprise engendered in law abiding motorists by the nature of the stop, but went on to state that with permanent (ie. non-roving) vehicle checkpoints, the generation of fear and surprise is appreciably less. The Supreme Court concluded that because the checkpoint was selected pursuant to guidelines and the police officers stopped every approaching vehicle (ie. had no real discretion), the subjective intrusion upon motorists was not unreasonable.

■ Surely advance publicity could theoretically eliminate any possibility of fear and surprise on the part of motorists stopped at such checkpoints. However, presumably because the Court in *Sitz* previously determined that the generation of fear and surprise was minimal with respect to non-roving vehicle checkpoints, the Court did not state that advance publicity was an absolutely necessary precaution. The Court simply evaluated the guidelines as a whole and concluded that the checkpoint program was reasonable (ie. minimally intrusive).

In this case, there were guidelines in effect on the date of Defendant's stop. The guidelines did not leave room for the exercise of unfettered discretion on the part of the police officers because the site was predetermined, the officers were required to stop every fifth vehicle and to search every vehicle in the same manner. Furthermore, the Magistrate Judge found, and this Court agrees, that the five minute detention of the motorists

---

with motorists having authorized access on post, not being under the influence of any drugs, vehicle registrations, valid drivers' licenses and post driving privileges, vehicle safety equipment, and valid insurance), the inspections were justified pursuant to the Commanding General's findings and authority. The Court agrees with the Magistrate Judge in this regard. Therefore, Defendant's contention on appeal that the inspection and search were overbroad is without merit.

With respect to the second issue, the fact that 30 drivers were stopped during the Fort Ord vehicle inspection and only one driver, Defendant, was apprehended does not render the entire operation ineffective. Indeed, in *Sitz*, only two drunken drivers were detected out of the 126 vehicles that were stopped, and the Supreme Court in that case determined that the checkpoint program still effectively advanced the

state's interests. *See Sitz*, 496 U.S. at 454–55, 110 S.Ct. at 2487–88.

3. Defendant seems to contest as an initial matter whether there were even properly authorized guidelines in effect on June 20, 1992, the date of Defendant's stop. The Magistrate Judge determined that there were properly authorized guidelines in effect on that day, albeit without a requirement of advance publicity. The Court accepts this finding and therefore proceeds from the point of evaluating the constitutionality of the guidelines as in effect, and will not entertain an argument that there were not properly authorized guidelines even in existence with respect to the Fort Ord vehicle checkpoint on June 20, 1992.

stopped was not unreasonable under the circumstances. Nor is there anything in the record to suggest that the time or location of the checkpoint was inappropriate or that the checkpoint was otherwise unsafe to motorists. Additionally, the officers' uniforms, lighting, and police equipment assured motorists of the official nature of the stop. Finally, the Court does not find that subjection to inspection by a narcotics dog under the circumstances and in light of the Commanding General's concerns was overly intrusive. Therefore, as a whole, the guidelines afforded reasonable precautions with respect to the intrusion on the individual motorists subject to the checkpoint.

Nothing in the Court's Order today is meant to minimize or devalue the fundamental and grave concern for an individual's right to be free from unnecessary, unrestrained, arbitrary, or oppressive interference by the government with his or her reasonable expectation of privacy or individual liberty. In fact, advance publicity of vehicle checkpoints may very well be one effective measure toward assuring the protection of such rights. The Court only holds today that current federal case law does not support the theory that advance publicity is an absolute requirement to upholding the constitutionality of vehicle checkpoint guidelines such that guidelines that lack advance publicity, no matter how many other safeguards they may contain, are constitutionally deficient.

The Court is aware that this holding is contrary to the conclusions of certain state court opinions. In *Banks*, for example, a California Court of Appeal determined that advanced publicity is a necessary requirement to a constitutionally sufficient sobriety checkpoint. The *Banks* court relied on *Sitz* and *Ingersoll* in reaching this conclusion. With respect to reliance on *Sitz*, in light of the Court's foregoing analysis, the Court would have to conclude that such reliance is misplaced. The Court does not agree with the *Banks* court that simply because the only checkpoint program passed upon by the Supreme Court to date contained advance publicity, that advance publicity is therefore clearly a requirement. Again, in this Court's opinion, there is nothing in the *Sitz* decision to suggest that the program was only upheld on this ground or that the program would not have been approved absent the advance publicity.

■ With respect to reliance on *Ingersoll*, it is not clear to this Court from the California Supreme Court's opinion in *Ingersoll* whether the factors enumerated there are meant to be a laundry list that must be checked off to ensure a minimally intrusive checkpoint program, or rather relevant factors to consider in assessing the overall level of intrusiveness. In any event, regardless of the Court's interpretation of the *Banks* and *Ingersoll* cases, this Court is not bound by California state law in evaluating the constitutionality of a federal sobriety checkpoint program conducted on a federal military base.[4]

Accordingly, Plaintiff's appeal of Magistrate Judge Garrett's order of suppression and dismissal is GRANTED.[5] The Magistrate Judge's order of suppression and dismissal is hereby REVERSED and the case is REMANDED to the trial court for further proceedings consistent with this Order.

IT IS SO ORDERED.

4. The Court also notes that *Banks* may no longer be cited as case authority because it has been superseded by grant of review by the California Supreme Court. *See People v. Banks,* 16 Cal. Rptr.2d 692, 845 P.2d 1084 (1993).

5. Because the Court has granted Plaintiff's appeal on the basis of Plaintiff's first argument, the Court need not address Plaintiff's remaining contentions.